UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION



U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
JAN 20 1999
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

WILLIAM L. OVERDYKE, M.D.

VERSUS

WRIGHT MEDICAL TECHNOLOGY, INC.

CIVIL ACTION NO.: CV99-0103 S

JUDGE: JUDGE WALTER
MAGISTRATE: MAGISTRATE JUDGE PAYNE

### COMPLAINT

NOW INTO COURT, through undersigned counsel, comes W. L. OVERDYKE, M.D. ("OVERDYKE") who, with respect represents:

### I. PARTIES

1.

Plaintiff, OVERDYKE, is a citizen of the State of Louisiana.

2.

Defendant, WRIGHT MEDICAL TECHNOLOGY, INC. ("WRIGHT"), is a foreign corporation organized under the laws of a state other than the State of Louisiana with its principal place of business in the State of Tennessee. Defendant's registered agent for service of process is C T Corporation System, 8550 United Plaza Blvd., Baton Rouge, Louisiana 70809. Defendant may be served with process by serving its registered agent.



## II. JURISDICTION

3.

This Court has jurisdiction herein under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

## III. FACTS

4.

On or about March 5, 1998, OVERDYKE entered into a contract with WRIGHT, a copy of which is attached hereto as Exhibit A (hereinafter referred to as the "contract").

5.

Pursuant to the terms of the contract, WRIGHT was to pay OVERDYKE two and two-tenths percent (2.2 percent) on the net sales of the PERFECTA® and INTERSEAL® products referred to therein.

6.

Although WRIGHT has made some payments to OVERDYKE pursuant to the terms of the contract, it has not paid him all amounts due thereunder, despite amicable demand by OVERDYKE.

7.

Furthermore, WRIGHT has refused OVERDYKE's request, pursuant to paragraph 2(a) of the contract, to make its records concerning the amounts due thereunder available to him for inspection.

8.

Appearer shows that OVERDYKE has in no way breached the provisions of the contract.

9.

As WRIGHT has failed to make timely payments to OVERDYKE pursuant to the terms and conditions of the contract and has failed to make its records available for inspection, it has breached the contract and is liable to OVERDYKE in an amount which approximates $500,000.00.

WHEREFORE plaintiff, W. L. OVERDYKE, M.D., prays that after due proceedings are had, this Court grant judgment in his favor against WRIGHT MEDICAL TECHNOLOGY, INC., for all damages sustained by W. L. OVERDYKE, M.D., in connection with the aforementioned breach of contract plus all costs and for all general and equitable relief.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: _____
Herschel E. Richard, Jr. #11729
John T. Kalmbach #24484

333 Texas Street
1700 Deposit Guaranty Tower
P. O. Box 22260
Shreveport, LA 71120-2260
Telephone:  (318) 221-6277
Telecopier: (318) 227-7850

ATTORNEYS FOR WILLIAM L. OVERDYKE, M.D.



WRIGHT
MEDICAL TECHNOLOGY, INC.
5677 AIRLINE ROAD
ARLINGTON, TN 38002
901-867-9971

February 6, 1998

William Overdyke, M.D.
2900 Hearne
Shreveport, LA 71103

Re:   Clinical Consulting and Development Agreement

Dear Dr. Overdyke:

Wright Medical Technology, Inc. (hereinafter "WMT") is engaged in the development, manufacture and sale of medical products, including prostheses and orthopedic joint implants and would like you to continue to provide development assistance and advice regarding the PERFECTA® and INTERSEAL® hip prostheses ~~and the AXIOM® total knee system~~ (hereafter ~~"Products"~~).

In view of the above, WMT proposes the following:

You will act as a designer, lecturer and consultant to WMT in the field of medical devices for ~~knees and~~ hips and, more specifically, provide WMT with services and expertise which will include, but not be limited to:

a.   Aid in the development and evaluation of WMT's Products and corresponding instrumentation.

b.   Time away from your practice necessary to participate in clinical consultant meetings, product development meetings, and seminars for clinicians where you may be asked to participate in a speaking capacity regarding the Products.

c.   Time necessary to review and co-author papers, articles and publications for submission to professional journals, professional associations, societies, etc., or for presentation to peer groups or regulatory agencies.

d.   Time necessary to assist in the development of educational information and the collection of clinical data related to the Products.

e.   Time necessary to host, at WMT's reasonable request, other surgeons or WMT personnel or sales representatives in a surgical demonstration and training and/or instruction on the proper use of the Products.

f.   To provide, at WMT's request, regular written activity reports detailing your efforts made during the performance of this Agreement.



EXHIBIT A

William Overdyke, M.D.
February 6, 1998                                                                                                    Page 2

2. In exchange for the above services, WMT shall pay you:

   a. A royalty of two and two-tenths percent (2.2%) on the Net Sales of the PERFECTA® and INTERSEAL® products identified in the attached Exhibit A, payable during the term of this Agreement. Payments of all royalties will be made 45 days after the end of each calendar quarter and records supporting such payments will be available for reasonable inspection by you or your agents at your expense for twenty-four (24) months after payment provided that all payments prior to that time shall not be presumed to be valid. For purposes of making royalty calculations, "net sales" shall be all sales of the components less returns and normal trade discounts, normal commissions, duties, taxes and/or other direct selling expenses. No royalties will be payable on Products or other implants sold to or used by hospitals at which you maintain privileges.

   b. Reimbursement for any reasonable travel expenses related to meetings and/or seminars where your participation is requested by WMT. Such meetings will be held at the discretion of WMT with reasonable advance notification to you when your participation in the meetings is requested.

   The parties hereby agree and confirm that no part of the above (or any other) compensation under this Agreement is intended in any way to induce any physician, or other health care provider, to use or purchase any product manufactured or sold by WMT.

3. It is to be understood that your role under this Agreement is that of an independent contractor and that you will not hold yourself out to be an agent or employee of WMT or of any parent or subsidiary of WMT.

4. It is contemplated that either WMT or any parent or subsidiary of WMT may wish to transmit confidential business or technical information relating to the above to you. You agree to receive such information in confidence to the extent it is identified by WMT as confidential. You agree not to use or to disclose such confidential information to any third party for a period of eight (8) years from the effective date the information was provided to you unless the information (a) was known to you prior to the time of disclosure as evidenced by tangible records, (b) is obtained from a third party having an apparent right to disclose the information, or (c) was or becomes available to the public through no fault of your own. This provision will survive termination of this Agreement for any reason.

5. This Agreement is intended to be exclusive to the extent that it would prevent you, during the term of the Agreement, from undertaking development or promotional work regarding total hip ~~or total knee~~ implants and instrument designs for any other orthopedic company or corporation. You also represent and warrant that you are free to serve as a consultant and advisor to WMT or assume the obligations described above.
   *May serve on advisory panels for other companies or corporations.*

6. Any and all patents or other proprietary information which may result from the cooperation between the parties under this Agreement shall be owned by WMT. You agree to execute all necessary assignment documents and agree that all rights assigned pursuant to this Agreement shall be freely assignable by WMT to any other person or entity. The

William Overdyke, M.D.
February 6, 1998

Page 3

      development of any product is within the complete discretion of WMT, and WMT's failure to develop or commercialize any product shall not give rise to any obligation to you, financial or otherwise.

7.    This Agreement is of a personal nature between you and WMT. Accordingly, you shall not delegate your obligations under this Agreement without the express advance written consent of WMT. This Agreement shall terminate upon your death whereupon royalties for the remaining term of this Agreement shall be paid to your estate. This Agreement constitutes the parties full understanding and agreement and supersedes any previous oral or written agreement between the parties including those regarding royalties, consulting or development entered into prior to this date. This Agreement may only be modified in writing upon agreement of the parties and shall be binding upon the parties hereto, their heirs and their successors in business.

8.    WMT hereby agrees to indemnify you for any and all liability arising from product liability claims of third parties related to products developed pursuant to this Agreement. Legal fees and expenses you may incur as a result of such claims shall be paid by WMT in a timely and customary manner upon submission of the proper billing statements and other supporting documents.

9.    Except for obligations with respect to confidential information, this Agreement is effective as of January 1, 1998 and shall continue for three (3) years and thereafter may be renewed by agreement by the parties. This Agreement may also be terminated by either party for cause if, after providing written notice to the other party, that other party has not cured the alleged breach within thirty (30) days. Upon early termination you shall be entitled to receive the compensation enumerated in paragraph 2 only up to the date of termination.

If the foregoing is acceptable to you, please sign and date both copies of this Agreement by January 30, 1998, and return both in the enclosed envelope. A fully executed copy will be returned to you.

Very truly yours,

Wright Medical Technology, Inc.

_____   4/1/98
Jack E. Parr, Ph.D.                  Date
Executive Vice President
Research and Development

Accepted and Agreed to This __5__ Day of __March__, 1998.

By: _____
     William Overdyke, M.D.